Good morning. Jean-Claude Grandberry on behalf of the United States. The District Court in this case made essentially two, maybe two and a half mistakes that would independently warrant reversal. The first is in finding that the agents did not have probable cause to believe that the Arlington apartment was functioning as defendant's residence. And I said two and a half mistakes because I recognize that our Miller-Begamme argument is a difficult one and I'll get to that in a few minutes if I may. But taking Howard's probable cause requirement as the state of this court's law and assuming that that's what this court has to apply. The District Court's first mistake here was that it appeared to have treated the four patterns identified in Howard as a checklist. And of course we know from our vizu and its progeny that when you're engaging in a Fourth Amendment analysis, it's a totality of the circumstances look at the facts. There are no checklists. And of course I recognize as a legal writer and courts have the same problem that I have which is that when you're writing out various factors that you're analyzing, it starts to look like a list. But at the same time when you're analyzing how the facts apply to previous factors identified, you cannot engage in a checklist analysis. I think though if you look at our past cases that have applied the probable cause standard, just even looking at it in the totality of the circumstances mode, I don't see enough here at all that would satisfy even just kind of comparing these facts to the facts of past cases. What's the best case you've got from a purely fact comparing facts, one set of facts to another you think establishes probable cause here? Well, I think the best three cases for us are Howard, Cuevas and Watts because those are the three cases in which this court found that probable cause was lacking. And here we have a lot more than what was lacking in those cases. In Howard, none of the four patterns were satisfied. There was no key. The defendant actually affirmatively appeared to be living at his listed address. Well, the second we have no idea about because they looked at that address for a total of two hours. The state of the record is that they looked at it at least once. And so whether you construe that as once or maybe twice, either way you have to analyze this question from the perspective of the law enforcement officers. I think there was at least one fact in the record where he did go back to that house, where they saw him go back to his original house. They did not. They followed him or he was going somewhere or something like that. They followed him around but they did not follow him back to his listed address. Okay, go ahead. And in Cuevas, all we had was an old, uncorroborated tip. And in Watts, we had an anonymous tip. So I think when you look at those cases, those cases set one bookend. And then you can look at the cases where there are some stronger facts. We're somewhere in the middle. We're not saying that we're, you know, all the way on the easy probable cause end of the spectrum. But I think we're comfortably in the middle and comfortably enough that the district court should have found probable cause here based on what the officers knew. And what they knew is that they saw this defendant at least five or six times, possibly as many as ten, in an 11-day period at the girlfriend's apartment. He had keys so he could come and go as he pleased. And, in fact, on all but one occasion, he came on his own. There was one occasion where she accompanied him. But that suggests, if anything, that that's his place, not her place, given that he could come and go so freely. The standard of review is abuse of discretion. The overarching standard of review is de novo. No, I'm talking about the finding that there was not sufficient evidence that it was his residence. I think that would be de novo because it would be the court's legal conclusion looking at all the facts. And here the district court didn't really make any factual findings. The only two findings that I can parse out of the record are, one, he found the agents credible because he said, you know, Alvarado was actually a really good witness and all the agents were credible. And then also his finding as a bottom-line matter that, well, it was just too speculative that this was his residence. I think what troubled him the most and what troubles me the most is that they, in all of the other cases, as far as I know, there was either no other putative residence or there was a negation of the putative residence. And that wasn't true here. It was a reported residence and they didn't go ask anybody whether he actually lived at his reported residence. They didn't look at the mailbox. They didn't do anything to suggest that he wasn't living where he said he was living. In this case, the agents were not trying to figure out where the defendant was. They were doing a drug trafficking investigation. Exactly. So they weren't trying to figure out where he was living. Well, I guess my case, they wanted to keep eyes on him with respect to drug trafficking and they knew where they could find him and where they could find him was at the girlfriend's apartment. That's where he was doing his drug trafficking, but that doesn't prove that's where he was living. But then they did go at least one time to check the listed address and Well, if somebody went to my house in the middle of the day to look for me, they wouldn't find me. That's undeniably true. But at the same time, they wouldn't be claiming that the Ninth Circuit is your residence if that's where you are when you're not at your house in the middle of the day. And here, the defendant was repeatedly with unfettered access at the girlfriend's apartment. My problem, I guess, with that argument is that, tell me if I'm wrong on this, I thought in all of the cases where we have held that probable cause was established that somebody that probably, let's say, was living at a residence other than the listed residence, the officers observed some kind of conduct that was only consistent with the person actually living there, right? Taking out the trash, being there at odd hours that suggests that you must be a resident as opposed just to a regular visitor, and it seems like the facts we've got here, they're fully consistent with the person just being a regular visitor to a girlfriend's apartment. It doesn't seem that unusual at all. Again, it's undeniably true that we are not as strong as some of those cases where you have the daily living activities. You don't have one daily living activity, right? Not one. I guess that's correct. Although, to that extent, the keys are very significant here. Again, that he could come and go as he pleased, just as he could come and go and use the car as he pleased, and he conceded that he didn't have an expectation of privacy in the car under the search condition in light of the fact that he could use it as he pleased. In some respects, I think that concession is quite telling. Of course, the defendant wants to keep the items found in the apartment out, but logically the car and the apartment are the same, and he's already conceded that law enforcement could freely get into the car. Well, he used the car by himself, but there's no evidence that he used the house by himself. Well, no, I mean, there is, that the officer saw him come and go. Without anybody being there? Yes. I mean, they saw him between five and ten occasions, and there's only one occasion where he was accompanied by the girlfriend. No reason to think she wasn't in the house. She came out of the house at some points and so on. They didn't see her through the window, whereas they did see him through the window. They didn't see her leave to the extent that she had been in there when he showed up. I thought they saw her take out the trash one time. So, Bev, I think if you look at the state of the record, we have to assume that she was not there. In fact, if you look at the defendant's declaration to establish his standing, he says that she was at work and she gave me the keys and told me to go pick up food, and I went into the apartment and I went and dropped off the food at her work, and I came back. I thought that was the time that he went to his own house, the address of his own house, when he went to get the food and came back. He declared that. Oh, I see. It was after the fact. Right, right. But so, again, you know, I think when you look at the totality of the record, including his own declaration, we can assume that he was using this apartment without her being there, and therefore it is just like the card. Let's say we're not persuaded that there was probable cause under the traditional standard. Help us with your analysis after that. Our position is that probable cause is not required at all, of course, in this instance, because although this Court does have Mayer and does have Franklin, which are two post-Samson cases that have cited Howard, those two cases did not go through, did not resolve the question presented here, which is whether Samson and Lopez are irreconcilable with Howard. And we think that they are reconcilable, and we think that, you know, Howard probably should have come out the other way when it did, as Judge Newnan pointed out, but certainly after Samson, Howard does not survive. I mean, I think you make a persuasive argument as to why there's tension there, but I thought the standard was a pretty demanding one. Under Miller v. Gammie? Yes. And in this instance, we're proceeding under the kind of inconsistent in theory, inconsistent in logic prong, not that, you know, Samson expressly overruled Howard, because of course it didn't. But the reason why the theories of the logic are inconsistent is that Samson basically says that Paroli's expectation of privacy is so severely diminished that he has just a sliver left. You can search his home, you can search his person, you can search all of his effects. And, of course, an overnight guest, which is what we have to assume the defendant was here. What's the sliver that remains? The sliver would be kind of the overarching judicial policing concern for reasonableness. So, I mean, Samson did not extinguish altogether Paroli's expectations of privacy. Some language about harassment and things like that. Right. Harassing searches, you know, searches that are carried out in a ridiculously unreasonable manner. I mean, Samson's a little murky about how much the actual condition matters. But it matters a little, at least. So that it appears that, I mean, another sliver might be how much did he actually give away or was given away for him as a condition. That's fair. I mean, I think a fair criticism of Samson is that it has a little bit of something for everyone. But our reading of it is that it's his parole status that matters most. And what's most informative as to that point is that Samson expressly said they were not resolving the case on Schneckloth consent grounds. But they nonetheless did look at the condition. No, they did. But they did to frame the issue and to say that because of, you know, the conditions, you know, this defendant in particular has, you know, pretty much. But I have two problems with the ability of us as a three-judge court to deal with this question. One of them is the one that Judge Watford has articulated. I mean, in that, what was our case law before Howard with regard to the searches allowed with regard to Paroli's? Was reasonable suspicion or what was it? It was reasonable cause to believe. Whatever it was, it was less than probable cause, but we still said you had a probable cause as to residence. Right. So we were abiding by a difference there. And therefore, it's hard to see why Samson knocked out the underpinnings since the underpinnings were that the standard for him being a resident there was more stringent than the standard for search if he was a resident there. Right. I mean, those cases, in our view, were inconsistent with Knight's because, of course, Knight's is a 1992 case. But, you know, they lived on as you know the judge works on. Right. I guess. All right. And then the second problem I have is that even so, you try and push aside Mayer and Franklin as not having addressed the question. But I don't know what you mean by that. They continue to explicitly apply the Howard standard after Samson. Yes, but they were not, I mean, well. They didn't address the question whether Samson changed that, but they did it. That's correct. And usually in our case law, a three-judge panel can't go behind a holding even if the holding isn't as articulate as you might like it to be. The government understands that. I mean, that was part of I guess what we call the Contreras dilemma. And that's why we fronted it and cited that case because that was at play when the courts were spontaneously asking. Was the issue raised in those cases? No, it was not. I mean, it was just assumed. It was assumed and then, you know, the court cited Howard and went about deciding the issues actually implicated. So if the issue wasn't raised, why would the court have addressed it and, therefore, you can't infer anything from those? Exactly. And that's why we think that this three-judge panel can navigate past Mayer and Franklin, although, of course, you know, going en banc. That's usually true. I don't know whether it's true when you're simply going on with what they'd already done before. I mean, we have two problems here. One is that I don't know if that three-judge panel could have changed even if they were asked. So it's a problem. Again, we recognize that an en banc review would be cleaner. I don't have authority to affirmatively ask for it here. And I see that I only have a minute and 45 seconds left. So unless the panel has further questions, I'd like to save it for rebuttal. Thank you. Thank you. Good morning, Your Honors. Carl Gunn, appearing for Mr. Granbury with me at counsel table with my co-counsel, Ms. Benarski, and her associate, Mr. LaHue, who worked on the case in the district court. Maybe I can start off with what you ended with on the last. Obviously, direct me to whatever you'd like to have me talk about. First of all, Judge Berzon, I did want to just make one point. You indicated that you thought the standard was something less than probable cause before Howard. I actually think it always was probable cause going all the way back. Probable cause with regard to the house. I mean it was less than probable cause with regard to the standard for a search if it was his house. Oh, yes, yes, yes. But what Howard's about. Therefore, the tension already existed. Right. At the time of Howard. But it's not a tension with Howard or with our case because the issue in our case is what level of suspicion. My point was simply that to say that Samson created the tension. Correct. Perhaps, though, what the court's question highlights is what I really focused on more when I was really brainstorming this case yesterday about how Howard really deals with an issue that's almost on a different axis than the issue that Samson deals with. And if I can try to explain what I mean by that. Samson held and the issue presented in Samson was specifically this. Whether a condition of release, namely the search condition, can diminish or eliminate a released prisoner's expectation of privacy. So that was the focus. I've never asked that before. Can we make the microphone less loud? I'm sorry. Make me less loud. So that was the issue presented in Samson. So the condition was clearly the sort of crux of why they took the case. Samson decided there's basically no expectation of privacy if you're on parole and you're told you can be searched. Samson did not address or decide the question of what if any expectation of privacy and how much expectation of privacy you have if you're on parole and you can be searched. Another thing Samson didn't address is Samson didn't decide how certain the police have to be  For example, Samson doesn't say how certain they have to be the person's on parole. Samson doesn't say how certain they have to be there is a search condition. Samson doesn't say how certain they have to be it's a place or thing that's covered by the search condition. And that, Your Honors, is what Howard's about. Howard is about how certain the police have to be that the thing or place in question is covered by the search condition. And Samson has absolutely nothing to do with that. Well, but I guess what bothers me is maybe you can just cut to the chase on this. How is it that, is it Lopez where we extended the Samson rationale to? So the defendant has no ability, no Fourth Amendment privacy interest. He can assert his own residence. How is it that he has greater Fourth Amendment rights? He can assert somebody else's residence. Because the state of California decided it wasn't going to expose someone else's residence to search. But Samson doesn't depend entirely just on the language of the parole condition. Well, but it depends a lot on that. The issue presented specifically references the existence of the condition. And they don't decide if you just have parole and no search condition, notice of search condition. They don't decide what expectation privacy there is. And more important than that, Your Honor, that's not inconsistent with or even inconsistent with, let alone clearly irreconcilable with Howard, because Howard's not about that issue. Howard's not about how much expectation of privacy a parolee has in someone's house. Howard's about how certain the police have to be, whether it's the parolee's house or someone else's. And Samson doesn't address that. Ergo, Samson is not irreconcilable or inconsistent with Howard. It's about a different question. And, of course, the issue before this Court is you'd have to find Howard was clearly irreconcilable with Samson. If Samson deals with a different issue, it can hardly be clearly irreconcilable. At some point, perhaps the Supreme Court will tell us what it has to say about how certain the police have to be about things like the person being on parole, like there being a search condition, and like the place being subject to that search condition. But Samson's not even about that. Samson's about how much expectation of privacy you have if there's a search condition, and maybe it implies something about how much expectation of privacy you have otherwise, but it doesn't address that. But that's not the issue in Howard. But you think if the parole conditions here just said very clearly, your residence and any other place you stay overnight, basically, you think that would be enough? Probably. Your Honors aren't presented with that question. Probably, but when you think about it, you'd still have, then the question would be how certain the police have to be that it's a place he's staying overnight. And Samson doesn't address that question either. For example, the standard for whether the person's actually on parole, I glanced at the 9th Circuit case law on that, and they say that police have to not just have probable cause. They use the word no. Now, I don't know if there's any case that's addressed the question of whether no really means no, or whether probable cause might be enough. But those questions about how certain the police have to be about the triggering factors is something that Samson's not even close to being about. And that's what Howard's about, and that's what this case is about. This case is not about what expectation of privacy you have in a place you're staying as a guest or a residence or those things. It's about whether the police had probable cause to believe it was his residence. I can move on to that. I think a lot of the questions the Court asked were suggesting some pretty good points about why there wasn't probable cause. We're not talking about a checklist here, but certainly when you have six or seven or eight or whatever it is reported cases with different factual scenarios that discuss how some of those factual scenarios show probable cause and some don't, you use those cases for guidance, and you look at the factors that the courts in those cases look to. And if you didn't, if you will, go down that list of factors, then someone would be appealing saying the District Court failed to consider an important factor that the Court of Appeals had said they want to consider. And that's the way lawyers do law and judges do judging. You look at cases for precedent and you compare facts. Your Honors made some very good points in your questions, if I can call them that. There was citing of him at the residence. I think the testimony is actually a lot more ambiguous than the government wants to admit about whether it was for sure five to ten times, but however many it was, they didn't see him doing anything like a resident does. No laundry, no picking up the newspaper. In a way, Watts versus Sacramento County and Howard have facts in some ways that are stronger than the facts here, and they still found no probable cause. It's pretty striking to me that in, I forget which case it was, either Watts versus Sacramento County or Howard, the man standing there in the doorway in his boxer shorts. That suggests a lot more about residence to me than coming between noon and ten o'clock and using the key to go in. The other case, they see him stretching in the morning in the doorway as if he's waking up. Same thing. To me, that's stronger. Now, granted, that's only one time on each occasion, but it's a lot more indicative sort of of residential status. The other point that distinguishes, there is not a single case in the reported cases. I thought everyone in California went around in their boxer shorts. No, Your Honor. Certain neighborhoods in Hollywood, I think. The other factor that's really important here, and it's emphasized in the cases, it's emphasized in Howard, is that in not a single case where there was an official parole address like Mr. Granberry had, was probable cause found where that address hadn't been eliminated. And as the district judge pretty clearly found here, it wasn't eliminated here. The Harper case is a- What about the property under his control language? Well, Your Honor, first of all, I think that's waived, and I'd really like the Court to look at the Marbled Murillette case. The language in the Marbled Murillette case talks about how the government waived it by not seeking a ruling, and it says, by failing to request a ruling in the district court on its doublet objections, which it made, by the way, pretrial, Pacific Lomber evaded that court's decision of the issue and denied the opposing party the opportunity to lay a better foundation for the evidence. I mean, after they lost on the other one, then they should have said, what about that one? I mean, they did raise, it was argued in the district court. In Marbled Murillette. In this case, they argued it in the district court. Well, they raised it after the hearing, after counsel had done all their cross-examination at the evidentiary hearing, et cetera. I was going to say, I think the Marbled Murillette case really fits here. Let me fit it to this case. By failing to request a ruling on the property under control argument, the government evaded district court findings on the issue, which would have been very useful to Your Honors, I submit, given the clear error standard of review for such findings, and denied the defense the opportunity to ask to reopen the hearing, which is what the defense would have done if they knew the judge was going to consider that issue and the government was going to pursue it. But if you were to get to the merits, Your Honor, I think it doesn't fit here for two reasons. I think it's striking that there are no cases applying that property under control clause to residential property. And that clause, there's cases noting that clause way back to 1980 at least, so it's been around a long time. It's not some new animal. I think there's two reasons there's no cases. One is, I think there's a really good argument that a parolee and a reasonable person would interpret that as meaning personal property or non-residential property as opposed to the residence, which appears right before it in the list. And, in fact, that's what the district court prosecutor thought. She said in the hearing, quote, we're not sure that the property under control language would actually apply to residences, unquote. So the prosecutor who actually tried this case for the government, the district court recognized at least that strong possibility. The other thing is, Your Honor, I was thinking about it. Maybe the reason. What if it was a business? I'm sorry? What if it was a business? I'm sorry, Your Honor. What if it was a business? In other words, another piece of real property but not a residence. That's why I think maybe the line is residential property instead of personal property because that's probably correct. The two examples the government gives of other residential property don't fit. A vacation home would be one of your residences, even if it wasn't the one you were in at the time. A rental property that you're renting to someone else, God forbid, I'm assuming that a parole search condition doesn't allow the parole authorities to search the property I'm renting to someone else. The case law says I can't even consent to that search under regular consent law. But this could have been essentially a business place for him. Well, I think that's also speculation. I mean, the district court found it was speculation to think it was his residence. I think, frankly, it was speculation to think that is. It's just total speculation about why he was going there, frankly. But the other reason control doesn't apply, Your Honors, is control in the case of a residential property. I'll tell you, if I had an overnight guest or visitor for a week or two, control to me means things like moving the pictures on the wall, moving the furniture around, deciding whether to cancel cable or phone service, deciding who else gets to stay there. The people who get to decide those things are residences. I think maybe the reason there's no cases on property under control applying to residences is because in the context of a residence, those two things merge. The people who control a residence are the residents. And so I don't think that there's three different reasons, any one of which is sufficient for us, why the government doesn't prevail on the property under control theory. Unless the Court has questions that I can address, I'd certainly like to address anything, but I don't think anything pops to my mind that I haven't talked about. I don't have anything. Thank you very much. Thank you, Your Honors. Counsel. Mr. Gunn is, of course, correct that Samson didn't directly address the question presented here or the question presented in Howard. The difficulty that I have with his unpacking of Samson is it suggests that Samson leaves this Court's case law recognizing that what the officers knew leaves that as a relevant factor to the defendant's expectation of privacy. To the extent it is relevant, I think it's only in that sliver that I was speaking about before where a search could become unreasonable and at that point pretty much anyone, however diminished their expectations are, could object to it. But it's in that narrow sliver. So your contention is what exactly is your contention about Samson? I mean, the search here was not a – I mean, it was partly of his person, but it was also of a place. What if he's in a – he's in, you know, middle of this courtroom? In other words, is your contention that they can come into any place where this person is and search him? I think that's the presumption post-Samson. Now, of course, you can imagine unreasonable hypotheticals. This defendant is – has a nice jacket on and he's carrying – All right, so he's in this courtroom and you can search the courtroom. Within reason. I mean, I don't think we can turn the courtroom over if there's no evidence that he hasn't, you know, gone behind the bench, gone to the clerk's desk. Well, but that's what you're saying about whatever house he's in. I mean, you're essentially – suppose he's visiting a friend, you know, for five minutes. That's where – Just go in and search the house?  But it's not unreasonable as to him. It's unreasonable as to the people's house it is. I thought your point was simply that he doesn't have any ability to object. There certainly are other people who can object. Absolutely. We're not suggesting that there's any problem with Motley, you know, so that everyone in this courtroom would have an ability – the ability to sue federal agents under Bivens or sue local officers under 1983. Well, that's a pretty good reason for California to limit the search condition to a residence that he has, or otherwise they're going to be sued all the time. I mean, perhaps, but at the same time, I mean, that – Samson, I think, goes beyond that because Samson in, you know, saying we're not doing this under – But that goes back to the argument that was being made, which is that whatever may be the case that California allowed these searches, it's not in the condition and that's relevant. It's relevant insofar as that's how Samson, you know, started its analysis. But when Samson expressly declined to go down the Schneckloth rabbit hole, that effectively took notice out of its rationale because notice and consent would go hand-in-hand if you're talking about, you know, what's on the form that he signs when he's released from prison. And the Supreme Court said we're not looking at that. So I don't think that notice or the actual conditions are particularly pertinent. It's that he's a parolee and, therefore, he has this narrow sliver and he can only object if the search is beyond the pale. But, of course, as Judge Wofford pointed out, other people who are adversely impacted by the search can, you know, object and have their own rights, as this Court recognized in Motley. Well, but what are they objecting to? If it was okay to search this person at this place, or search this place because this person is there, then what are they objecting to? It would be the third parties or the actual, like, homeowner, host. Are they going to object that there was no evidence that this was that guy's residence? Yes. And why does that remain relevant after Samson? If it's okay to search even if it isn't his residence. Because Samson is about – I understand that it's about his rights. But if – I guess where is the – their right to – you're supposing that if he is in this house, whether or not he's a resident, if he were a resident, that the person who was a co-resident would have no rights. But if he was not a resident, the person who was the co-resident could complain about it. I think either way the co-resident could complain about it because it could potentially impact their independent Fourth Amendment rights. It would be more difficult if they were truly, you know, co-residents, co-habitants. But that's – And they could complain about it on the ground that there was not sufficient evidence that Granberry was a resident? Well, you know, if there was sufficient evidence that Granberry was a resident, then Motley would kick in and that third party would either have a claim or not. I guess it's just all hypothetical, but it's interesting in terms of how the two pieces fit together. No, we totally agree. I mean, I guess our point is that we think that Motley leaves a sufficient deterrent to police over-aggressive policing such that, you know, the defendant doesn't get suppression here, but his girlfriend might be able to sue us. And that's okay because that will keep the officers from going in, let's say, just based on a lark. And that's ultimately what the courts are concerned about when they're making sure that searches, particularly of residences or homes, are reasonable. That's that reasonableness sliver that Samson leaves. I see I'm over my time. If I could quickly address the waiver argument. All right, go ahead. For whatever reason, my colleague in district court was not focused on the property under your control prong here. The suggestion that marbled murrelet somehow kicks in and results in a waiver here, we think, is totally off base. We filed a supplemental brief two days after the hearing, squarely raising this issue. The defendant came back with a much lengthier submission, including a proffer of evidence that he would submit had there been further evidentiary development in open court, but never asked for a reopening of the hearing. The district court in its first two orders in this case acknowledged the issue and expressly declined to resolve the issue on that ground because it was denying suppression. It didn't have to reach it. Then when the district court changed its mind and sui sponte reconsidered itself, at that point we think the district court frankly just forgot to go back and address this other threshold question or dispositive question. So we think the record is sufficient here for the court to reverse on any property prong, but at minimum I guess we'd have to go back to Judge Wilson if the court disagreed that the record was sufficiently developed because Judge Wilson just didn't make any findings on that. Okay. Thank you both very much for a really exemplary argument. I really appreciate both of the arguments. They were unusually good and helpful. Thank you very much. United States v. Granberry is submitted.
judges: Rakoff, Berzon, Watford